B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>DAVID SEROR, Chapter 7 Trustee | DEFENDANTS<br>EDUARD DNEPROVKSY, An Individual, and, NELLI DNEPROVSKKAYA, An Individual |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>ROSENDO GONZALEZ<br>GONZALEZ & ASSOCIATES, P.L.C.<br>530 S. HEWITT ST., SUITE 148<br>LOS ANGELES, CA 90013<br>T: (213) 452-0070 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) TO AVOID PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. 547; (2) TO AVOID FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. 544 AND 548; (3) TO RECOVER AVOIDED TRANSFER PURSUANT TO 11 U.S.C. 550; (4) AUTOMATIC PRESERVATION OF AVOIDED TRANSFER PURSUANT TO 11 U.S.C. 551; AND, (5) SEEK TO SELL PROPERTY PURSUANT TO 11 U.S.C. 363

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☒ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>PEDRAM SHIRZAD | BANKRUPTCY CASE NO.<br>1:15-BK-11350-VK | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>SAN FERNANDO VALLEY | NAME OF JUDGE<br>VICTORIA S. KAUFMAN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>DAVID SEROR, Chapter 7<br>Trustee | DEFENDANT<br>Semira Shirzad | ADVERSARY<br>PROCEEDING NO.<br>1:16-AP-01014-VK |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>CENTRAL | DIVISION OFFICE<br>SAN FERNANDO VALLEY | NAME OF JUDGE<br>VICTORIA S. KAUFMAN |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>03/22/2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>ROSENDO GONZALEZ | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1   ROSENDO GONZALEZ (State Bar No. 137352)
    GONZALEZ & ASSOCIATES, P.L.C.
2   530 S. Hewitt Street, Suite 148
    Los Angeles, California 90013
3   Telephone (213) 452-0070
    Facsimile (213) 452-0080
4   E-mail: rossgonzalez@gonzalezplc.com

5   Counsel for David Seror,
    Chapter 7 Trustee and Plaintiff
6

7

8                 UNITED STATES BANKRUPTCY COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10               SAN FERNANDO VALLEY DIVISION

11

12   In re                          )   BK. No. 1:15-bk-11350-VK
                                     )      [Chapter 7]
13   PEDRAM SHIRZAD,                 )
                                     )
14            Debtor.               )
                                     )
15   _____ )   Adv. No. _____
                                     )
16   DAVID SEROR, Chapter 7          )   COMPLAINT:
     Trustee,                        )
17                                   )   (1) TO AVOID PREFERENTIAL
                Plaintiff,           )   TRANSFER PURSUANT TO 11
18                                   )   U.S.C. § 547;
     v.                              )
19                                   )   (2) TO AVOID FRAUDULENT
                                     )   TRANSFER PURSUANT TO 11
20   EDUARD DNEPROVKSY, An           )   U.S.C. §§ 544 AND 548;
     Individual; and, NELLI          )
21   DNEPROVSKKAYA, An Individual,  )   (3) TO RECOVER AVOIDED
                                     )   TRANSFER PURSUANT TO 11
22           Defendants.            )   U.S.C. § 550;
                                     )
23                                   )   (4) AUTOMATIC PRESERVATION
                                     )   OF AVOIDED TRANSFER PURSUANT
24                                   )   TO 11 U.S.C. § 551; and,
                                     )
25                                   )   (5) SEEK TO SELL PROPERTY
                                     )   PURSUANT TO 11 U.S.C. § 363
26                                   )
                                     )
27   _____ )

28   ///

     S:\home\3569\3569.025.complaint Dneprovsky .wpd
     3/21/16 RG                    -1-

1      David Seror, the Chapter 7 trustee in this bankruptcy

2   case and the plaintiff in this adversary proceeding, respectfully

3   represents and alleges as follows:

4

5                    **JURISDICTION/VENUE/PARTIES**

6

7      1.    This adversary proceeding arises in and relates to

8   bankruptcy case, titled *In re Pedram Shirzad*, bankruptcy case

9   number no. 1:15-bk-11350-VK, which is presently pending before

10  the United States Bankruptcy Court for the Central District of

11  California, San Fernando Valley Division.

12     2.    This Court has jurisdiction over this adversary

13  proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

14     3.    The venue is proper in this district pursuant to

15  23 U.S.C. § 1409.

16     4.    This action is a core proceeding under 28 U.S.C.

17  § 157(b)(2)(A), (F), (H) and (O).  This Court can and should

18  enter a final judgment herein.

19     5.    This bankruptcy case was commenced by Pedram Shirzad

20  (the "Debtor") with the filing of a voluntary Chapter 7 petition

21  under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*,

22  on April 17, 2015.

23     6.    David Seror is the duly appointed and acting Chapter 7

24  trustee in this bankruptcy case and the plaintiff in this

25  adversary proceeding (the "Plaintiff" or the "Trustee").

26  ///

27  ///

28  ///

S:\home\3569\3569.025.complaint Dneprovsky .wpd
3/21/16 RG                    -2-

7.   Eduard Dneprovsky is an individual and is believed to be the father of Alia Shirzad, the Debtor's non-filing spouse ("A. Shirzad")("Dneprovky").  Dneprovsky is a defendant in this adversary proceeding.

8.   Nelli Dneprovskkaya is an individual and is believed to be the mother of A. Shirzad ("Dneprovskkaya").  Dneprovskkaya is a defendant in this adversary proceeding.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

9.   In Schedules "A and "D," the Debtor disclosed an ownership interest in a real property commonly described as 14235 Dickens Street, #8, Sherman Oaks, California 91423 (the "Sherman Oaks Property" or the "Property"), with a value of $720,000 and subject to two debts of $552,499.89 owing to Caliber Home Loans and $100,000 owing to Dneprovsky and Dneprovskkaya (collectively, the "Defendants").

10.   In Schedule "B," the Debtor disclosed ownership interest in various personal properties with a collective value of $10,650, including the following: (i) Chase account with a balance of $3,000, (ii) Wells Fargo account with a balance of $200, (iii) jewelry with a value of $150, and (iv) ownership interest in "Pedram Shirzd D.O., Inc." ("PSDO") with only the value of the Chase account.

11.   In Schedule "F," the Debtor identified unsecured debts in the collective amount of $892,467.81.

///

///

12. In response to question no. 3 of the Statement of Financial Affairs, the Debtor disclosed various payments, including $10,497.66 to Caliber Home Loans [for the Sherman Oaks Property].

13. In response to question no. 10 of the Statement of Financial Affairs, the Debtor represented that he had not transferred any property to anyone within 2 years nor had he transferred any property to a self-settled trust within 10 years.

14. On or about March 10, 2014, a quit claim deed was recorded with the Los Angeles County Recorder's Office as Instrument No. 20140238855 wherein A. Shirzad transferred to the Debtor "as his sole and separate property" the interest to the Sherman Oaks Property (the "March 2014 Quit Claim Deed"). A copy of the March 2014 Quit Claim Deed is attached hereto and is incorporated herein as Exhibit "1."

15. On or about March 10, 2014, a grant deed was recorded with the Los Angeles County Recorder's Office as Instrument No. 20140238856 wherein Lazaro Wisnia transferred to the Debtor "as his sole and separate property" the interest to the Sherman Oaks Property (the "March 2014 Grant Deed"). A copy of the March 2014 Grant Deed is attached hereto and is incorporated herein as Exhibit "2."

16. On or about March 10, 2014, a deed of trust was recorded with the Los Angeles County Recorder's Office as Instrument No. 20140238857 wherein Bay Equity, LLC ("Bay Equity") received a secured interest in the Sherman Oaks Property with respect to a loan in the principal amount of $560,000 (the "March ///

2014 Deed of Trust"). A copy of the March 2014 Deed of Trust is attached hereto and is incorporated herein as Exhibit "3."

17. On or about August 8, 2014, a deed was recorded with the Los Angeles County Recorder's Office as Instrument No. 20140830037 wherein the Defendants received a secured interest in the Sherman Oaks Property for a purported loan in the amount of $100,000 (the "August 2014 Deed" or the "August 2014 Transfer"). A copy of the August 2014 Deed is attached hereto and is incorporated herein as Exhibit "4."

18. In response to the Trustee's request and on or about December 29, 2015, Rosendo Gonzalez of Gonzalez & Associates, P.L.C., general bankruptcy counsel for the Trustee ("Gonzalez"), received a letter from Leslie A. Cohen of Leslie Cohen Law, counsel for the Debtor ("Cohen"), providing information and documents, including the deeds referenced herein above and a Wells Fargo statement showing six (6) deposits between June 1, 2014, and July 1, 2014, in the collective amount of $75,000 apparently received by the Debtor from the Defendants (the "July 2014 Statement"). A copy of Cohen's December 29, 2015 letter [without all of the referenced enclosures, but including the July 2014 Statement] to Gonzalez is attached hereto and is incorporated herein as Exhibit "5."

19. In the December 29, 2015 letter, Cohen states that the Defendants made a loan of $25,000 to the Debtor in 2004 and provided another loan in the amount of $75,000 in 2014. *See*, Exhibit "5."

///

///

1    20.    On or about January 19, 2016, Gonzalez wrote a

2    letter, sent via first class and email, to Cohen seeking

3    information and documentation as to the Debtor's receipt and

4    usage of the funds from the Defendants.  A copy of Gonzalez's

5    January 19, 2016 letter to Cohen is attached hereto and is

6    incorporated herein as Exhibit "6."

7    21.    On or about February 16, 2016, Gonzalez received an

8    email from J'aime Williams from Leslie Cohen Law ("Williams"),

9    producing a number of documents purportedly showing the Debtor's

10   usage of about $70,978 between August 2014 and July 2015 of the

11   funds allegedly received from the Defendants.  A copy of

12   Williams' February 16, 2016 email [with the enclosures] to

13   Gonzalez is attached hereto and is incorporated herein as Exhibit

14   "7."

15

16                      **FIRST CLAIM FOR RELIEF**

17               **(To Avoid Preferential Transfer Against**

18             **the Defendants – Pursuant to 11 U.S.C. § 547)**

19

20   22.    Plaintiff repeats the allegations in paragraphs 1

21   through 21 of this complaint with the same effect as if set forth

22   here.

23   23.    The August 2014 Transfer was apparently the Debtor's

24   satisfaction of a purported debt owing by the Debtor to the

25   Defendants.

26   24.    The August 2014 Transfer constituted a transfer of

27   property of the Debtor and was made to or for the benefit of the

28   Defendants as apparent creditors of the Debtor.

25.   The August 2014 Transfer was made by the Debtor to the Defendants on an alleged account of antecedent debt owed by the Debtor to the Defendants.

26.   At the time of the August 2014 Transfer, the Debtor was "insolvent" as that term is defined in Section 101 of the Bankruptcy Code.

27.   At the time of the August 2014 Transfer, the Defendants, as the in-laws of the Debtor [as parents of the Debtor's spouse], were "insiders" of the Debtor as that term is defined in Section 101 of the Bankruptcy Code.

28.   The August 2014 Transfer benefitted the Defendants as creditors in that the transfer enabled them to receive more on account of their claim against the Debtor than they would have received absent the August 2014 Transfer, if the Defendants were to receive only Chapter 7 dividends on account of their claim.

29.   Pursuant to the provisions of 11 U.S.C. § 547(b), the Plaintiff is entitled to avoid the August 2014 Transfer and to remove the August 2014 Deed from the Sherman Oaks Property, preserving that $100,000 avoidance for the benefit of the bankruptcy estate.

///
///
///
///
///
///
///
///

## SECOND CLAIM FOR RELIEF

### (To Avoid Fraudulent Transfer Against

### the Defendants - Pursuant to 11 U.S.C. §§ 544(b) and

### 548(a)(1)(A))

30.   Plaintiff repeats the allegations in paragraphs 1 through 29 of this complaint with the same effect as if set forth here.

31.   To the extent that the August 2014 Transfer was not a payment of a debt owing by the Debtor to the Defendants, it appears that the August 2014 Transfer was made and incurred with the actual intent to hinder, delay or defraud entities to which the Debtor was, and would thereafter become, indebted.

32.   Pursuant to the provisions of 11 U.S.C. § 544(b) and the applicable provisions of the California Civil Code, and further pursuant to 11 U.S.C. § 548(a)(1)(A), the Plaintiff is entitled to avoid the August 2014 Transfer.


## THIRD CLAIM FOR RELIEF

### (To Avoid Fraudulent Transfer Against

### the Defendants - Pursuant to 11 U.S.C. §§ 544(b) and

### 548(a)(1)(B))

33.   Plaintiff repeats the allegations in paragraphs 1 through 32 of this complaint with the same effect as if set forth here.

///

///

34.   To the extent that the August 2014 Transfer was not a payment of a debt owing by the Debtor to the Defendants, it appears that the August 2014 Transfer was one for which the transferor-Debtor did not receive a reasonably equivalent value in exchange and were ones which occurred at a time when the transferor-Debtor was insolvent or after and as a result of which he became insolvent.

35.   Pursuant to the provisions of 11 U.S.C. § 544(b) and the applicable provisions of the California Civil Code, and further pursuant to 11 U.S.C. § 548(a)(1)(B)(i), the Plaintiff is entitled to avoid the August 2014 Transfer.

## FOURTH CLAIM FOR RELIEF

### (To Avoid Fraudulent Transfer Against the Defendants - Pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B))

36.   Plaintiff repeats the allegations in paragraphs 1 through 35 of this complaint with the same effect as if set forth here.

37.   To the extent that the August 2014 Transfer was not a payment of a debt owing by the Debtor to the Defendants, it appears that the August 2014 Transfer was one for which the transferor-Debtor received less than a reasonably equivalent value in exchange and was one which occurred at a time when the transferor-Debtor was engaged in or about to engage in business or transactions with unreasonably small assets and property.

///

38.   Pursuant to the provisions of 11 U.S.C. § 544(b) and the applicable provisions of the California Civil Code, and further pursuant to 11 U.S.C. § 548(a)(1)(B)(ii), the Plaintiff is entitled to avoid the August 2014 Transfer.

**FIFTH CLAIM FOR RELIEF**

**(To Avoid Fraudulent Transfer Against**

**the Defendants – Pursuant to 11 U.S.C. §§ 544(b) and**

**548(a)(1)(B))**

39.   Plaintiff repeats the allegations in paragraphs 1 through 38 of this complaint with the same effect as if set forth here.

40.   To the extent that the August 2014 Transfer was not a payment of a debt owing by the Debtor to the Defendants, it appears that the August 2014 Transfer was one for which the transferor-Debtor received less than a reasonably equivalent value in exchange and was one after which the Debtor intended to incur, or believed they would incur, debts that would be, as they matured, beyond his ability to pay.

41.   Pursuant to the provisions of 11 U.S.C. § 544(b) and the applicable provisions of the California Civil Code, and further pursuant to 11 U.S.C. § 548(a)(1)(B)(iii), the Plaintiff is entitled to avoid the August 2014 Transfer.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CLAIM FOR RELIEF

### (To Recover Property or Damages on

### Account of Avoided Transfer Against the Defendants

### - Pursuant to 11 U.S.C. § 550(a)(1))

42.   Plaintiff repeats the allegations in paragraphs 1 through 41 of this complaint with the same effect as if set forth here.

43.   With respect to the August 2014 Transfer, the Defendants were the initial transferees of the August 2014 Transfer, which is subject to avoidance by virtue of the first five (5) claims for relief stated above.

44.   By virtue of 11 U.S.C. § 550(a)(1), the Plaintiff is entitled to recover the voided transfer from the Defendants.

## SEVENTH CLAIM FOR RELIEF

### (To Recover Property or Damages on

### Account of Avoided Transfer Against the Defendants

### - Pursuant to 11 U.S.C. § 550(a)(2))

45.   Plaintiff repeats the allegations in paragraphs 1 through 44 of this complaint with the same effect as if set forth here.

46.   With respect to the August 2014 Transfer, the Defendants were the secondary (immediate or mediate) transferees of the August 2014 Transfer, which is subject to avoidance by virtue of the first five (5) claims for relief stated herein above.

S:\home\3569\3569.025.complaint Dneprovsky .wpd
3/21/16 RG                    -11-

1

### EIGHTH CLAIM FOR RELIEF

2

### (To Automatic Preservation of Avoided Transfer –

3

### Against the Defendants – Pursuant to 11 U.S.C. § 551)

4

5      47.   Plaintiff repeats the allegations in paragraphs 1

6   through 46 of this complaint with the same effect as if set forth

7   here.

8      48.   With respect to any avoided transfer, subject to

9   avoidance under the first five (5) claims for relief stated

10   herein above, it should be preserved for the benefit of this

11   bankruptcy estate.

12

13

### NINTH CAUSE OF ACTION

14

### (To Sell Property – Pursuant to 11 U.S.C. § 363)

15

16      49.   The Plaintiff repeats the allegations in paragraphs 1

17   through 48 with the same effect as if set forth here.

18      50.   Section 363(b)(1) of the Bankruptcy Code authorizes the

19   Trustee to sell property of the estate.  11 U.S.C. § 363(b)(1)

20   provides that "[t]he trustee, after notice and a hearing, may

21   use, sell or lease, other than in the ordinary course of

22   business, property of the estate."

23      51.   The standard to be applied in determining whether a

24   sale should be authorized under 11 U.S.C. § 363(b)(1) is whether

25   such sale is in the best interest of the estate and the price is

26   fair and reasonable.

27   ///

28   ///

S:\home\3569\3569.025.complaint Dneprovsky .wpd
3/21/16 RG                          -12-

52.    Pursuant to 11 U.S.C. § 363(f), the Trustee can sell the Sherman Oaks Property free and clear of liens and encumbrances.

53.    Pursuant to 11 U.S.C. § 363(h), the Trustee can sell both the bankruptcy's interest in the Sherman Oaks Property and the interest of the Defendants [if any] in the Sherman Oaks Property since: (i) partition of the Sherman Oaks Property is impracticable; (ii) sale of the estate's interest in the Sherman Oaks Property would realize significant less for the sale than sale of the Sherman Oak Property free of the interests of the Defendants; (iii) the benefit to the bankruptcy estate of sale of the Sherman Oaks Property free of the interests of the Defendants outweighs the detriment, if any, to the Family Trust; and, (iv) the Sherman Oaks Property is not used "in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power."

54.    As such, and pursuant to 11 U.S.C. §§ 363(f) & (g), the Plaintiff seeks an order allowing him to sell the Sherman Oaks Property free and clear of liens.

WHEREFORE, the Plaintiff prays for judgment against the Defendants as follows:

1.    On the First Cause of Action, to avoid the preferential transfer of property of the estate;

2.    On the Second, Third, Fourth and Fifth Causes of Action, to avoid the fraudulent transfer of property of the estate;

3.    On the Sixth and Seventh Causes of Action, to recover the avoided transfer of property of the estate;

1    4.    On the Eighth Cause of Action, for automatic

2  preservation of the avoided transfer for the benefit of the

3  estate;

4    5.    On the Ninth Cause of Action, to allow the sale of the

5  Sherman Oaks Property free and clear of liens.

6    6.    For costs of suit incurred herein; and

7    7.    For such other and further relief as the Court may

8  deem just and proper.

9  Dated:  March 2(, 2016        GONZALEZ & ASSOCIATES
                                A Professional Law Corporation

10

11

12

13                              By: _____
                                    ROSENDO GONZALEZ
14                              Counsel for David Seror, Chapter 7
                                Trustee and Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "1"



This page is part of your document - DO NOT DISCARD





## 20140239955

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/10/14 AT 08:00AM**

| FEES: | 28.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**LEADSHEET**



201403100270012

**00008938487**



006072508

**SEQ:**
**01**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T71

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

PEDRAM SHIRZAD
14235 DICKENS ST
UNIT #8
SHERMAN OAKS CA 91423

03/10/2014

*20140239955*

SPACE ABOVE FOR RECORDER'S USE ONLY

QUITCLAIM DEED
**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

RECORDING REQUESTED BY

**PROGRESSIVE TITLE**
AND WHEN RECORDED MAIL TO:

Pedram Shirzad
14235 Dickens Street, Unit # 8
Sherman Oaks, CA  91423

A.P.N.: 2266-003-101          Order No.: PR1480008          Escrow No.: 6557-SA

# QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) DOCUMENTARY TRANSFER TAX IS $ **0.00***

_____ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area:          **XXX**  City of Los Angeles, and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Alia Shirzad, Wife of the Grantee
hereby remise, release and forever quitclaim to
Pedram Shirzad, a Married Man as his sole and separate property

the following real property in the city of Los Angeles, county of Los Angeles, State of California:

### See Exhibit "A" attached hereto and made a part hereof

**Property Address Commonly known as 14235 Dickens Street, Unit # 8, Sherman Oaks Area, Los Angeles, CA  91423**

***"This conveyance establishes sole and separate property of a spouse, R&T 11911."**

***"It is the express intent of the Grantor, being the spouse of the Grantee to convey all right, title and interest of the Grantor, community or otherwise, in and to the herein described property to the Grantee as him/her sole and separate property."**

_Shirzad_
Alia Shirzad

Document Date:  March 5, 2014

STATE OF CALIFORNIA          )SS
COUNTY OF _Los Angeles_      )

On _March 5 2014_____, before me, _M. Rambaut, Notary Public_____,
a notary public in and for said State, personally appeared _Alia Shirzad_ who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _M. Rambaut_____  (Seal)

M. RAMBAUT
Commission # 2048238
Notary Public · California
Los Angeles County
My Comm. Expires Dec 4, 2017

MAIL TAX STATEMENTS TO:  SAME AS ABOVE or Address Noted Below

[   ]                      [   ]                      [   ]
Name                  Street Address                City & State

SMB Vision Form QUITCLAI

# Exhibit "A"

**PARCEL 1:**

**A CONDOMINIUM COMPRISED OF:**

**(A) AN UNDIVIDED 1/8TH INTEREST IN AND TO LOT 1 OF TRACT NO. 45172, IN THE CITY OF
LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 1147, PAGES 38 AND 39 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.**

**EXCEPT UNITS 1 TO 8 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN
RECORDED DECMBER 15, 1989 AS INSTRUMENT NO. 89-2015461, OFFICIAL RECORDS.**

**EXCEPT ALL MINERALS, COALS, OILS, PETROLEUM AND KINDRED SUBSTANCES AND
NATURAL GAS UNDER AND IN SAID LAND, AS RESERVED BY TITLE INSURANCE AND
TRUST COMPANY, A CORPORATION, BY DEED RECORDED AUGUST 10, 1925 AS
INSTRUMENT NO. 486, IN BOOK 5161, PAGE 4, OFFICIAL RECORDS.**

**BY AN INSTRUMENT FILED FOR RECORDED AUGUST 27, 1948, TITLE INSURANCE AND
TRUST COMPANY WAIVES THE RIGHT OF ENTRY TO THE SOUTH 165 FEET OF SAID LAND
WHICH MAY OR MIGHT BE IMPLIED BY THE EXCEPTION ABOVE SHOWN.**

**(B) UNIT 8 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.**

**PARCEL 2:**

**AN EXCLUSIVE EASEMENT FOR ROOF PATIO PURPOSES OVER THOSE AREAS BEARING
THE SAME NUMBER AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE
MENTIONED.**

**ASSESSOR'S PARCEL NO.: 2266-003-101**

# Exhibit "2"



This page is part of your document - DO NOT DISCARD



## 20140239956



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/10/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 3,920.00 |
| OTHER: | 0.00 |
| PAID: | 3,948.00 |



LEADSHEET



201403100270012

00008938488



006072509

SEQ:
02

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**



T71

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

PEDRAM SHIRZAD

14235 DICKENS ST UNIT #8

SHERMAN OAKS CA 91423

03/10/2014

*20140239956*

SPACE ABOVE FOR RECORDER'S USE ONLY

GRANT DEED

**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

RECORDING REQUESTED BY
**PROGRESSIVE TITLE**
AND WHEN RECORDED MAIL TO:

Pedram Shirzad
Alix Shirzad
14235 Dickens Street, Unit # 8
Sherman Oaks, CA  91423

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

A.P.N.: 2266-003-101          Order No.: **PR1480008**          Escrow No.: 6557-SA

# GRANT DEED

 

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $ 770.00  & CITY $ 3,150.00
**XXX**  computed on full value of property conveyed, or
_____  computed on full value less liens or encumbrances remaining at the time of sale.
_____  unincorporated area:          **XXX**   City of Los Angeles, and

FOR A VALUABLE CONSIDERATION receipt of which is hereby acknowledged,
Lazaro Wisnia, as Trustee of the Lazaro G. Wisnia Family Trust Trust dated October 14, 2000, as Restated, or his Successors-
in-Trust and any amendments thereto

hereby GRANT(S) to  Pedram Shirzad ~~AND ALIX SHIRZAD, HUSBAND AND WIFE AS JOINT TENANTS~~
                    A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY
the following described real property in the County of Los Angeles, State of California:

## See Exhibit "A" attached hereto and made a part hereof
Property Address Commonly Known as 14235 Dickens Street, Unit # 8, Sherman Oaks, CA  91423

The Lazaro G. Wisnia Family Trust dated October 14, 2000, as
Restated, or his Successors-in-Trust and any amendments thereto

_____
Lazaro Wisnia, as Trustee

Document Date:  January 7, 2014

STATE OF CALIFORNIA          )SS
COUNTY OF _Los Angeles_      )
On _Jan. 9 2014_ , before me, _M. Rambaut Notary Public_ ,
a notary public in and for said State, personally appeared Lazaro Wisnia who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

Signature _M. Rambaut_          (Seal)

M. RAMBAUT
Commission # 2048238
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2017

MAIL TAX STATEMENTS TO:  SAME AS ABOVE or Address Noted Below

_____          _____          _____
Name                     Street Address            City & State

# Exhibit "A"

**PARCEL 1:**

**A CONDOMINIUM COMPRISED OF:**

(A) AN UNDIVIDED $1/8^{TH}$ INTEREST IN AND TO LOT 1 OF TRACT NO. 45172, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1147, PAGES 38 AND 39 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 8 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED DECMBER 15, 1989 AS INSTRUMENT NO. 89-2015461, OFFICIAL RECORDS.

EXCEPT ALL MINERALS, COALS, OILS, PETROLEUM AND KINDRED SUBSTANCES AND NATURAL GAS UNDER AND IN SAID LAND, AS RESERVED BY TITLE INSURANCE AND TRUST COMPANY, A CORPORATION, BY DEED RECORDED AUGUST 10, 1925 AS INSTRUMENT NO. 486, IN BOOK 5161, PAGE 4, OFFICIAL RECORDS.

BY AN INSTRUMENT FILED FOR RECORDED AUGUST 27, 1948, TITLE INSURANCE AND TRUST COMPANY WAIVES THE RIGHT OF ENTRY TO THE SOUTH 165 FEET OF SAID LAND WHICH MAY OR MIGHT BE IMPLIED BY THE EXCEPTION ABOVE SHOWN.

(B) UNIT 8 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

**PARCEL 2:**

AN EXCLUSIVE EASEMENT FOR ROOF PATIO PURPOSES OVER THOSE AREAS BEARING THE SAME NUMBER AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

**ASSESSOR'S PARCEL NO.: 2266-003-101**

# Exhibit "3"



This page is part of your document - DO NOT DISCARD



# 20140239957



**Pages:
0017**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/10/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 70.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 70.00 |



**L E A D S H E E T**

201403100270012

00008938489

006072508

**SEQ:
03**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E441941                                              T71





03/10/2014

*20140239957*

# PROGRESSIVE TITLE

When recorded, mail to:
Bay Equity LLC
Attn: Final Document Department
2300 Clayton Road, Suite 450
Concord, CA 94520

LOAN #: 1401004937

PR1480008 _____— [Space Above This Line For Recording Data] —_____

## DEED OF TRUST

| MIN  1006166-0004004134-6 |
| MERS PHONE #: 1-888-679-6377 |

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   March 4, 2014,                        together with all Riders to this document.

**(B) "Borrower" is**   PEDRAM SHIRZAD, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY.

Borrower is the trustor under this Security Instrument.
**(C) "Lender" is**   Bay Equity LLC.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                        Page 1 of 12

Initials: _____
CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST



$\eta$

**LOAN #: 1401004937**

Lender is  a Limited Liability Company,
California.
1100, San Francisco, CA 94111.

organized and existing under the laws of
Lender's address is   100 California Street, Suite

(D) "Trustee" is  PROGRESSIVE TITLE COMPANY.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   March 4, 2014.                   The Note states that Borrower owes Lender FIVE HUNDRED SIXTY THOUSAND AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S.  $560,000.00                     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1, 2044.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider         ☒ Condominium Rider               ☐ Second Home Rider
☐ Balloon Rider                 ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider              ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                  Page 2 of 12

Initials: _____
CAEDEDL 1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**County**                            [Type of Recording Jurisdiction] of   **Los Angeles**
[Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**
**APN #:  2266-003-101**

which currently has the address of   **14235 DICKENS ST UNIT# 8, Sherman Oaks,**
                                                                                                                              [Street] [City]
**California  91423**                         ("Property Address"):
                    [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current, Lender

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc                                          Page 3 of 12

Initials: _____
                    CAEDEDL   1212
                              CAEDEDL
                 03/04/2014 03:15 PM PST

LOAN #: 1401004937

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required

**CALIFORNIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Ellie Mae, Inc.                              **Page 4 of 12**

Initials: 
CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                                                Page 5 of 12

Initials: _____
CAEDEDL   1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                                   Page 6 of 12

Initials: _____
CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be character-ized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

**CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                              Page 7 of 12

Initials: _____
CAEDEDL   1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower

**CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                                      Page 8 of 12

Initials: 

CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

**CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.

Page 9 of 12

Initials: _____

CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST



LOAN #: 1401004937

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
Ellie Mae, Inc.                                                 Page 10 of 12

Initials: 
CAEDEDL  1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                                    Page 11 of 12

Initials: 
CAEDEDL 1212
CAEDEDL
03/04/2014 03:15 PM PST

LOAN #: 1401004937

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  3-5-14 (Seal)
PEDRAM SHIRZAD                                            DATE

State of CALIFORNIA
County of LOS ANGELES

On March 5 2014_____, before me, M. Rambaut, Notary Public
(here insert name and title of the officer), personally appeared PEDRAM SHIRZAD, who proved to me on the basis of satisfactory evidence to be  the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____M. Rambaut_____

_____(NOTARY)


(SEAL)


M. RAMBAUT
Commission # 2048238
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2017


Lender: Bay Equity LLC
NMLS ID: 76988
Broker: Pacific Bancorp Inc
NMLS ID:
Loan Originator: Farid Moradi
NMLS ID: 291850

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
Ellie Mae, Inc.                                   Page 12 of 12                    CAEDEDL  1212
                                                                                  CAEDEDL
                                                                         03/04/2014 03:15 PM PST

# Exhibit "A"

**PARCEL 1:**

**A CONDOMINIUM COMPRISED OF:**

(A) AN UNDIVIDED 1/8TH INTEREST IN AND TO LOT 1 OF TRACT NO. 45172, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1147, PAGES 38 AND 39 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 8 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED DECMBER 15, 1989 AS INSTRUMENT NO. 89-2015461, OFFICIAL RECORDS.

EXCEPT ALL MINERALS, COALS, OILS, PETROLEUM AND KINDRED SUBSTANCES AND NATURAL GAS UNDER AND IN SAID LAND, AS RESERVED BY TITLE INSURANCE AND TRUST COMPANY, A CORPORATION, BY DEED RECORDED AUGUST 10, 1925 AS INSTRUMENT NO. 486, IN BOOK 5161, PAGE 4, OFFICIAL RECORDS.

BY AN INSTRUMENT FILED FOR RECORDED AUGUST 27, 1948, TITLE INSURANCE AND TRUST COMPANY WAIVES THE RIGHT OF ENTRY TO THE SOUTH 165 FEET OF SAID LAND WHICH MAY OR MIGHT BE IMPLIED BY THE EXCEPTION ABOVE SHOWN.

(B) UNIT 8 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

**PARCEL 2:**

AN EXCLUSIVE EASEMENT FOR ROOF PATIO PURPOSES OVER THOSE AREAS BEARING THE SAME NUMBER AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

ASSESSOR'S PARCEL NO.: 2266-003-101

LOAN #: 1401004937
MIN: 1006166-0004004134-6

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **4TH** day of **March, 2014**
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to **Bay Equity LLC, a
Limited Liability Company**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at:   **14235 DICKENS ST UNIT# 8, Sherman Oaks, CA 91423.**

The Property includes a unit in, together with an undivided interest in the common
elements of, a condominium project known as:   **14235 DICKENS HOA**

(the "Condominium Project").
If the owners association or other entity which acts for the Condominium Project (the
"Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association
and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements
made in the Security Instrument, Borrower and Lender further covenant and agree as
follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations
under the Condominium Project's Constituent Documents. The "Constituent Documents"
are the: (i) Declaration or any other document which creates the Condominium Project;
(ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent
Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included within
the term "extended coverage," and any other hazards, including, but not limited to,

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                                                            Initials: 
Ellie Mae, Inc.                              Page 1 of 3                           F3140RLU   0307
                                                                                      F3140RLU
                                                                            03/04/2014 03:15 PM PST

LOAN #: 1401004937

earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                              Initials: 
Ellie Mae, Inc.                          Page 2 of 3              F3140RLU  0307
                                                                      F3140RLU
                                                          03/04/2014 03:15 PM PST

LOAN #: 1401004937

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Condominium Rider.

_____    $3-5-14$ (Seal)
PEDRAM SHIRZAD                                                    DATE


**MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3140 1/01**
Ellie Mae, Inc.                                    Page 3 of 3                          F3140RLU  0307
                                                                                       F3140RLU
                                                                            03/04/2014 03:15 PM PST



# Exhibit "4"



**This page is part of your document - DO NOT DISCARD**





## 20140830037

**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/08/14 AT 01:06PM**

| | |
|---|---|
| FEES: | 49.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 49.00 |



**L E A D S H E E T**



201408080640024

**00009494793**



006335713

**SEQ:**
**01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E438467

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Name
Street    Kousha Berokim
Address   270 N Canon Dr, Fl 3
City &    Beverly Hills, CA  90210
State
Zip

Title Order No.          Escrow No.

Assessors Parcel Number: 2266-003-101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

This DEED OF TRUST, made  June 25, 2014                                              between
Pedram Shirzad and Alia Shirzad                                             herein called TRUSTOR,

whose address is  14235 Dickens Street, Unit 8, Sherman Oaks, CA  91423

(Number and Street)              (City)              (State)              (Zip Code)

CHICAGO TITLE COMPANY,  a California Corporation, herein called TRUSTEE, and

Eduard Dneprovsky and Nelli Dneprovskkaya
whose address is c/o Kousha Berokim 270 N Canon Dr, Fl 3, Beverly Hills, CA  90210
, herein called BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale that property in
Sherman Oaks,                          County of  Los Angeles                    , State of California, described as:

See Attached "A"
Commonly known as 14235 Dickens Street, Unit 8, Sherman Oaks, CA  91423
APN 2266-003-101

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 100,000.00                with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of the Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his or her successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

A. To protect the security of this Deed of Trust, and with respect to the property above described, Trustor agrees:
    (1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

    (2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

    (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, Including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

    (4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

Page 1

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date, of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9) The Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him or her at his or her address hereinbefore set forth.

Dated ___07/0³/2014___

STATE OF CALIFORNIA
COUNTY OF ___Los Angeles___

On ___July 3rd, 2014___ before me,
___Fariba Berokim, a Notary Public___
(here insert name and title of the officer)

, personally appeared ___Pedram Shirzad and Alia Shirzad___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___F Berokim___

Signature of Trustor

___Pedram Shirzad___

___Shirzad___
Alia Shirzad

FARIBA BEROKIM
Commission # 1976457
Notary Public - California
Los Angeles County
My Comm. Expires Apr 27, 2016

Page 2                                   [This area for official notarial seal]

# Exhibit "A"

**PARCEL 1:**

A CONDOMINIUM COMPRISED OF:

(A) AN UNDIVIDED 1/8TH INTEREST IN AND TO LOT 1 OF TRACT NO. 45172, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1147, PAGES 38 AND 39 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 8 INCLUSIVE AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED DECMBER 15, 1989 AS INSTRUMENT NO. 89-2015461, OFFICIAL RECORDS.

EXCEPT ALL MINERALS, COALS, OILS, PETROLEUM AND KINDRED SUBSTANCES AND NATURAL GAS UNDER AND IN SAID LAND, AS RESERVED BY TITLE INSURANCE AND TRUST COMPANY, A CORPORATION, BY DEED RECORDED AUGUST 10, 1925 AS INSTRUMENT NO. 486, IN BOOK 5161, PAGE 4, OFFICIAL RECORDS.

BY AN INSTRUMENT FILED FOR RECORDED AUGUST 27, 1948, TITLE INSURANCE AND TRUST COMPANY WAIVES THE RIGHT OF ENTRY TO THE SOUTH 165 FEET OF SAID LAND WHICH MAY OR MIGHT BE IMPLIED BY THE EXCEPTION ABOVE SHOWN.

(B) UNIT 8 AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

**PARCEL 2:**

AN EXCLUSIVE EASEMENT FOR ROOF PATIO PURPOSES OVER THOSE AREAS BEARING THE SAME NUMBER AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE MENTIONED.

ASSESSOR'S PARCEL NO.: 2266-003-101

# Exhibit "5"

LESLIE COHEN LAW
B A N K R U P T C Y    P R A C T I C E

506 SANTA MONICA BLVD, SUITE 200
SANTA MONICA, CA 90401
LESLIE@LESLIECOHENLAW.COM
TEL. 310 394 5900
FAX. 310 394 9280

December 29, 2015

**By E-mail**

Rosendo Gonzalez
rossgonzalez@gonzalezplc.com

Re:    Pedram Shirzad
Case No. 1:15-bk-11350-VK

In response to the requests made in your letter of December 9, 2015, please find the following responses and copies of documents attached to this letter:

1.  Notes, deeds and transfer docs for both properties
    a.  Responsive documents regarding the 16027 Dickens property were previously provide via correspondence dated June 17, 2015, and correspondence dated October 26, 2015.
    b.  Responsive document regarding the 14235 Dickens property are attached as *Exhibit A*.
2.  Latest mortgage statements for both properties
    a.  The banks have ceased sending mortgage statements to the Debtor since the bankruptcy filing. The most recent statements that the Debtor could locate were previously provided via correspondence dated July 30, 2015.
3.  Proof of  insurance for both properties
    a.  Responsive documents were previously provided via correspondence dated July 30, 2015.
4.  Statement of any financial accounts where Debtor was a signatory
    a.  Attached as *Exhibit B* are bank statements since January 2014 that were previously compiled and provide to U.S. Trustee.
5.  Payments made by the Debtor with respect to both properties
    a.  Numerous receipts relating to both 16027 Dickens and 14235 Dickens were previously compiled and provided via correspondences dated June 17, 2015 and July 30, 2015.
6.  Evidence regarding receipt of funds from Dneprovskay's and usage of those funds.
    a.  $25,000 of the $100,000 was provided by the Dneprovskay's in 2004, and the remaining $75,600 was provided in 2014.  A statement showing the receipt of

In re Shizad
12/29/2015
Page 2

the $75,000 is attached as Exhibit C.  These funds were deposited into an account with other money and as a result, the Debtor is unable to specifically trace the usage of the Dneprovskay funds.

We believe the documents provided herein and previously are substantially responsive to the requests made in you December 9, 2015 letter.  Please let us know if further clarification is needed or if you need us to resend the June and July correspondence and documents.

Thank you and best regards,

J'aime Williams
*Associate Bankruptcy Attorney*

Encl.

Cc: David Seror  dseror@ebg-law.com

# EXHIBIT C



Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX6992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as of 12/14/15 | $9,282.81 |
| Current Posted Balance | $9,282.81 |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | $9,282.81 |

### Transactions

Find Transactions
Description or Keyword
Dates6          Last 18 Months
Amounts or Check Numbers Amount    $12,600.00
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions   Note: Debit card transaction amounts may change | | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 07/01/14 | WT FED#02450 AVANT-BANK PJSC /ORG=1/DNEPROVSKA NELLI SRF# F1S1407017323500 TRN#140701040437 RFB# | $12,600.00 | |
| 07/01/14 | WT FED#02433 AVANT-BANK PJSC /ORG=1/DNEPROVSKY EDUARD SRF# F1S1407017310000 TRN#140701039756 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03459 DIAMANT BANK /ORG=DNEPROVSKA NELLI SRF# 0626106689013553 TRN#140626052010 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03338 AVANT-BANK PJSC /ORG=1/DNEPROVSKA NELLI SRF# 0626105345013393 TRN#140626049838 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03334 AVANT-BANK PJSC /ORG=1/DNEPROVSKY EDUARD SRF# 0626105331013390 TRN#140626049746 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03252 DIAMANT BANK /ORG=DNEPROVSKII EDUARD GENRIHOVYCH SRF# 0626104753013299 TRN#140626048960 RFB# | $12,600.00 | |
| Totals | | $75,600.00 | $0.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2015 Wells Fargo. All rights reserved.

# Exhibit "6"

# Gonzalez

# & Associates

A Professional Law Corporation

530 South Hewitt Street, Ste. 148
Los Angeles, CA 90013
(T) 213-452-0070
(F) 213-452-0080
www.los-angeles-business-law.com

January 19, 2016

Rosendo Gonzalez

rossgonzalez@gonzalezplc.com
(bankruptcy and commercial law
business litigation)
- also admitted in Texas

Lazaro Fernandez
- Of Counsel
(bankruptcy and business law)
- also admitted in Florida

Mireya Gonzalez

migonzalez@gonzalezplc.com
- Trustee Administrator

Via email (leslie@lesliecohenlaw.com)
And First Class Mail

Leslie A. Cohen, Esq.
Leslie Cohen Law, P.C.
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401

Re:  Pedram Shirzad
USBC Case No. 1:15-bk-11350-VK

Dear Ms. Cohen:

This letter will serve as a follow-up to my December 9, 2015 letter to you and to your office's emails of December 29, 2015, producing various documents and explaining that some of those documents were previously produced to the Trustee.

With respect to my request for the production of information/documentation, such as bank statements, showing the receipt by the Debtor of the $100,000 identified amount from Eduard Dneprovsky and Nelli Dneprovskay, as set forth in the Debtor's Schedule "D," your office produced a copy of a summary of a Wells Fargo account [-6992] showing various deposits/wire transfers between June 28, 2014, and July 1, 2014, in the collective amount of $75,000.  I am enclosing a copy of this Wells Fargo summary.

Please have the Debtor explain and produce any relevant documentation why was the lien provided in the amount of $100,000 if he only received $75,000; also, please have the Debtor specifically provide evidence and documentation how he used the $75,000 in the period between July 2014 and his April 2015 bankruptcy filing.

Leslie A. Cohen, Esq.
January 19, 2016
Page 2


I would like to have the information/documentation within 14 days of this letter; please let me confirm.

If you have any questions or comments with respect to this matter, please do not hesitate to call me.  I thank you for your anticipated attention to this matter.

Very truly yours,


Rosendo Gonzalez

RG\rg\3569
Enclosure
cc. David Seror (via email & w/enclosure)

 **WELLS FARGO**

Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX6992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as of 12/14/15 | $9,282.81 |
| Current Posted Balance | $9,282.81 |
| Pending Withdrawals/Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | $9,282.81 |

### Transactions

Find Transactions
Description or Keyword
Dates    Last 18 Months
Amounts or Check Numbers    Amount    $12,600.00
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 07/01/14 | WT FED#02450 AVANT-BANK PJSC /ORG=1/DNEPROVSKA NELLI SRF# F1S1407017323500 TRN#1407010140437 RFB# | $12,600.00 | |
| 07/01/14 | WT FED#02433 AVANT-BANK PJSC /ORG=1/DNEPROVSKY EDUARD SRF# F1S1407017310000 TRN#1407010039756 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03459 DIAMANT BANK /ORG=DNEPROVSKA NELLI SRF# 0626106689013553 TRN#140626052010 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03338 AVANT-BANK PJSC /ORG=1/DNEPROVSKA NELLI SRF# 0626105345013393 TRN#140626049838 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03334 AVANT-BANK PJSC /ORG=1/DNEPROVSKY EDUARD SRF# 0626105331013390 TRN#140626049746 RFB# | $12,600.00 | |
| 06/26/14 | WT FED#03252 DIAMANT BANK /ORG=DNEPROVSKII EDUARD GENRIHOVYCH SRF# 0626104753013299 TRN#140626049860 RFB# | $12,600.00 | |
| Totals | | $75,600.00 | $0.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender

© 1995 – 2015 Wells Fargo. All rights reserved.

# Exhibit "7"



506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
jaime@lesliecohenlaw.com
Tel. 310 394 5900
Fax. 310 394 9280

IF YOU HAVE RECEIVED THIS TRANSMISSION AND ARE NOT THE IDENTIFIED RECIPIENT(S) OR HIS/HER AGENT, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE AND DELETE THIS TRANSMISSION.  Any disclosure, use, review, copying, selling, dissemination  publication or
distribution of this transmission is unauthorized and prohibited.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX
ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) WAS NOT INTENDED OR WRITTEN TO BE USED,
AND CANNOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER FEDERAL, STATE OR LOCAL TAX LAW OR
(ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

**From:** J'aime Williams
**Sent:** Tuesday, February 16, 2016 5:10 PM
**To:** Ross Gonzalez <rossgonzalez@gonzalezplc.com>
**Cc:** Leslie Cohen <leslie@lesliecohenlaw.com>; "docman148' <docman148@gonzalezplc.com>; Brian Link
<brian@lesliecohenlaw.com>
**Subject:** RE: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569

Mr. Gonzalez,

In response to your Jan 19 letter, it is difficult to trace the specific funds deposited into the account ending in 6992 from
the Dneprovsky's, and they were comingled with other funds in the account.  While the Debtor is still looking through
records, it appears that the Dneprovsky funds were used for household expenses which were paid from the account
ending in 6992, as well as from an account ending in 5092 (following transfers from 6992).  Attached are supporting
records that the Debtor was able to locate.   If/when more information come available, we will provide it as well.

Thank you,

*J'aime Williams*
*Associate Bankruptcy Attorney*



506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
jaime@lesliecohenlaw.com
Tel. 310 394 5900
Fax. 310 394 9280

IF YOU HAVE RECEIVED THIS TRANSMISSION AND ARE NOT THE IDENTIFIED RECIPIENT(S) OR HIS/HER AGENT, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE AND DELETE THIS TRANSMISSION.  Any disclosure, use, review, copying, selling, dissemination  publication or
distribution of this transmission is unauthorized and prohibited.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX
ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) WAS NOT INTENDED OR WRITTEN TO BE USED,

AND CANNOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER FEDERAL, STATE OR LOCAL TAX LAW OR
(ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

**From:** Brian Link
**Sent:** Tuesday, February 02, 2016 5:00 PM
**To:** Ross Gonzalez <rossgonzalez@gonzalezplc.com>
**Cc:** Leslie Cohen <leslie@lesliecohenlaw.com>; J'aime Williams <jaime@lesliecohenlaw.com>; ''docman148'
<docman148@gonzalezplc.com>
**Subject:** RE: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569

We're working with the Debtor to put the information together, which is taking some time.  Hopefully this won't impact
the RFS hearings as the Dneprovsky lien is on the Debtor's residence and not the property that is subject to the pending
RFS motions.
Best,

Brian A. Link
 Associate Attorney



506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
brian@lesliecohenlaw.com
Tel. 310 394 5900 ext. 11
Fax. 310 394 9280

CONFIDENTIAL AND PRIVILEGED COMMUNICATION. IF YOU HAVE RECEIVED THIS TRANSMISSION AND ARE NOT THE IDENTIFIED
RECIPIENT(S) OR HIS/HER AGENT, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND DELETE THIS TRANSMISSION.  Any disclosure,
use, review, copying, selling, dissemination  publication or distribution of this transmission is unauthorized and prohibited.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX
ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) WAS NOT INTENDED OR WRITTEN TO BE USED,
AND CANNOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER FEDERAL, STATE OR LOCAL TAX LAW OR
(ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

**From:** Ross Gonzalez [mailto:rossgonzalez@gonzalezplc.com]
**Sent:** Tuesday, February 02, 2016 11:23 AM
**To:** Brian Link <brian@lesliecohenlaw.com>
**Cc:** Leslie Cohen <leslie@lesliecohenlaw.com>; J'aime Williams <jaime@lesliecohenlaw.com>; ''docman148'
<docman148@gonzalezplc.com>
**Subject:** RE: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569

When should I expect it since time is of the essence in view of the two pending motions for
relief?

**From:** Brian Link [mailto:brian@lesliecohenlaw.com]
**Sent:** Tuesday, February 02, 2016 11:14 AM
**To:** rossgonzalez@gonzalezplc.com
**Cc:** Leslie Cohen; J'aime Williams
**Subject:** Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK

Mr. Gonzalez,

We wanted to let you know that we are in receipt of your January 19, 2016 follow-up letter, and are in the process of putting together a response to get to you as soon as available. We appreciate your time and consideration.

Best regards,

Brian A. Link
  Associate Attorney



506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
brian@lesliecohenlaw.com
Tel. 310 394 5900 ext. 11
Fax. 310 394 9280

CONFIDENTIAL AND PRIVILEGED COMMUNICATION. IF YOU HAVE RECEIVED THIS TRANSMISSION AND ARE NOT THE IDENTIFIED RECIPIENT(S) OR HIS/HER AGENT, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND DELETE THIS TRANSMISSION. Any disclosure, use, review, copying, selling, dissemination publication or distribution of this transmission is unauthorized and prohibited.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER FEDERAL, STATE OR LOCAL TAX LAW OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.



**Wells Fargo Business Online®**

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX5029

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | |
| Current Posted Balance | |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | |

### Transactions

Show:  for  Date Range: 00/22/14 to 00/22/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 00/22/14 | BAMERICAN EXPRESS ACH PMT 140922 W7524 ALIA SHIRZAD  *Family Expenses* | | $2,131.77 |
| 00/22/14 | BONLINE TRANSFER FROM ALIA SHIRZAD CRNA REF #IBEXR6LK2X BUSINESS CHECKING CREDIT CARD PAYMENT | $4,500.00 | |
| Totals | | $4,500.00 | $2,000.05 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

https://online.wellsfargo.com/das/cgi-bin/session.cgi?sessargs=SkpoEV4Orev5rfbA-Nd4jIT6ZYhg4S7x

**Wells Fargo Business Online®**

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX5029

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | |
| Current Posted Balance | |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | |

### Transactions

Show:  for Date Range  11/03/14  to  11/05/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 11/05/14 | AMERICAN EXPRESS ACH PMT 141105 W0724 ALIA SHIRZAD   *family expenses* | | $2,916.10 |
| 11/05/14 | ONLINE TRANSFER FROM ALIA SHIRZAD ORNA REF #IB59H8Q9RJ BUSINESS CHECKING CREDIT CARD PAYMENT | $3,600.00 | |
| Totals | | $3,600.00 | $2,916.10 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

⌂ Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.



Wells Fargo Business Online®

# Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX5029

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as ▬▬▬▬ | ▬▬▬ |
| Current Posted Balance | ▬▬▬ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ▬▬▬ |

## Transactions

Find Transactions
Description or Keyword
Dates11          Date Range   08/01/14   to   12/17/14
Amounts or Check Numbers
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 12/02/14 | PAYPAL INST XFER 141202 NETFLIX.COM OLGA ZAVGORODNIA | | $7.91 |
| 12/01/14 | PAYPAL INST XFER 141129 ZARA USA OLGA ZAVGORODNIA | | $45.70 |
| 12/01/14 | CHECK CRD PURCHASE 11/28 CELEBRITY LOOK, IN LOS ANGELES CA 425907XXXXXX2454 584333037816858 ?MCC=7298 | | $200.00 |
| 11/28/14 | PAYPAL INST XFER 141128 YOOX CORP OLGA ZAVGORODNIA | | $440.38 |
| 11/26/14 | PAYPAL INST XFER 141126 NEIMANMARCU OLGA ZAVGORODNIA | | $68.50 |
| 11/17/14 | CHECK CRD PURCHASE 11/15 TRIM VENICE CA 425907XXXXXX2454 584320037781945 ? MCC=7230 | | $205.00 |
| 11/12/14 | PAYPAL INST XFER 141112 NETFLIX.COM OLGA ZAVGORODNIA | | $7.99 |
| 11/06/14 | PAYPAL INST XFER 141105 ALTERNATIVE OLGA ZAVGORODNIA | | $138.99 |
| 11/06/14 | CHECK CRD PURCHASE 11/05 ZAP*ZAPPOS.COM 800-927-7671 NV 425907XXXXXX2454 384309204591231 ?MCC=5661 | | $352.07 |
| 11/05/14 | AMERICAN EXPRESS ACH PMT 141105 W0724 ALIA SHIRZAD | | $2,916.10 |
| 10/27/14 | COMENITY PAY SB WEB PYMT 102414 856373420801388 ALIA SHIRZAD | | $336.41 |
| 10/14/14 | POS PURCHASE - COSTCO WHSE #00 VAN NUYS CA 2454 0000000932740178 | | $1,500.00 |
| 10/10/14 | CHECK CRD PURCHASE 10/09 RHI*RESTO 989 CW 800-910-9636 CA 425907XXXXXX2454 584283039517057 ?MCC=5712 | | $1,464.00 |

Wells Fargo Account Activity

| Date | Description | | | Amount |
|---|---|---|---|---|
| 10/07/14 | CHECK | | | $240.00 |
| 10/07/14 | CHECK CRD PURCHASE 10/06 RHI*RESTO 989 CW 800-910-9836 CA 425907XXXXXX2454 584279587997440 ?MCC=5712 | | | $1,838.00 |
| 10/07/14 | CHECK CRD PURCHASE 10/06 RHI*RESTO 989 CW 800-910-9836 CA 425907XXXXXX2454 464279587992186 ?MCC=5712 | | | $900.00 |
| 10/07/14 | CHECK CRD PURCHASE 10/06 RHI*RESTO 989 CW 800-910-9836 CA 425907XXXXXX2454 584279587997497 ?MCC=5712 | | | $798.00 |
| 10/06/14 | CHECK CRD PURCHASE 10/03 TASHKENT INC. NORTH HOLLYWO CA 425907XXXXXX2454 004277006710361 ?MCC=5411 | | | $53.80 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 09/30/14 | MONTHLY SERVICE FEE | | | $12.00 |
| 09/29/14 | POS PURCHASE - TJ TJ MAXX TARZANA CA 2454 00464271702761953 | | | $87.19 |
| 09/29/14 | POS PURCHASE - TJ TJ MAXX TARZANA CA 2454 00464271700310956 | | | $98.07 |
| 09/25/14 | POS PURCHASE - NORDSTROM 358 21490 VI WOODLAND HIL CA 2454 00464268115163370 | | | $800.00 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 09/22/14 | AMERICAN EXPRESS ACH PMT 140922 W7524 ALIA SHIRZAD | | | $2,131.77 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 09/08/14 | POS PURCHASE - 99-CENTS-ONLY # 6755 V VAN NUYS CA 2454 00464251788671237 | | | $9.81 |
| 09/08/14 | POS PURCHASE - THE HOME DEPOT 6644 PANORAMA CITYCA 2454 00584250117836206 | | | $25.33 |
| 09/08/14 | CHECK CRD PURCHASE 09/06 LIVING SPACES PANORAMA CITY CA 425907XXXXXX2454 584250103090257 ?MCC=5712 | | | $866.55 |
| 09/08/14 | CHECK CRD PURCHASE 09/06 LIVING SPACES PANORAMA CITY CA 425907XXXXXX2454 384250100831691 ?MCC=5712 | | | $866.55 |
| 09/08/14 | CHECK CRD PURCHASE 09/06 LIVING SPACES PANORAMA CITY CA 425907XXXXXX2454 464250099879464 ?MCC=5712 | | | $350.60 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 09/03/14 | POS PURCHASE - 99-CENTS-ONLY # 6755 V VAN NUYS CA 2454 00584246799893125 | | | $40.59 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 08/29/14 | MONTHLY SERVICE FEE | | | $12.00 |
| 08/25/14 | AMERICAN EXPRESS ACH PMT 140825 W5838 ALIA SHIRZAD | | | $1,393.61 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 08/18/14 | CHECK CRD PURCHASE 08/16 LIVING SPACES PANORAMA CITY CA 425907XXXXXX2454 304228771413294 ?MCC=5712 | | | $2,534.10 |
| 08/05/14 | CHECK CRD PURCHASE 08/04 YAMASHIRO HOLLYWOOD CA 425907XXXXXX2454 464216136318319 ?MCC=5812 | | | $593.20 |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

 Wells Fargo Business Online®

## Account Activity

**Business and Personal Accounts**

**BUSINESS CHECKING XXXXXX5029**

### Activity Summary

| | | |
|---|---|---|
| Ending Collected Balance as ~~████~~ | | ~~████~~ |
| Current Posted Balance | | ~~████~~ |
| Pending Withdrawals/ Debits | | $0.00 |
| Pending Deposits/ Credits | | $0.00 |
| Available Balance | | ~~████~~ |

### Transactions

**Find Transactions**
Description or Keyword
Dates11           Date Range  12/19/14  to  12/29/14
Amounts or Check Numbers
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 12/29/14 | AMERICAN EXPRESS ACH PMT 141229 W7192 ALIA SHIRZAD | | $11,316.98 |
| 12/29/14 | PAYPAL INST XFER 141228 ASHCLESTER OLGA ZAVGORODNIA | | $30.00 |
| 12/23/14 | PAYPAL INST XFER 141223 FREEPEOPLEC OLGA ZAVGORODNIA | | $231.34 |
| ~~████~~ | ~~████████████████████████~~ | | |
| ~~████~~ | ~~████████████████████████~~ | | |
| 12/19/14 | PURCHASE AUTHORIZED ON 12/18 NORDSTROM 351 100 N LA LOS ANGELES CA P00584353206336461 CARD 2464 | | $62.00 |
| Totals | | $0.00 | $12,183.73 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

---

⌂ Equal Housing Lender

© 1995 – 2016 Wells Fargo. All rights reserved.

Account number:  1534335029   ■  June 1, 2014 - June 30, 2014



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 6/23 | | American Express ACH Pmt 140622 W9166 Alia Shirzad | | 945.67 | |
| 6/25 | | Rono Ceng lat Paypal 140625 J222222Rge2Hl Olga Zavgorodnia | | 1 460.37 | |

Account number:  1534335029   ▪  July 1, 2014 - July 31, 2014



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 7/1 | | Desislava Luka Iat Paypal 140701 J222222Sg75Ry Olga Zavgorodnia | | 4.29.98 | |
| 7/1 | | Paypal Inst Xfer 140701 Netflix Inc Olga Zavgorodnia | | 8.71 | |
| 7/3 | | Check Crd Purchase 07/02 Chevron 00093909 North Hollywo CA 425907xxxxxx2454 464184075021947 ?McC=5542 | | 49.01 | |
| 7/3 | | Ben Anderson Iat Paypal 140703 5Xz22873D4Sll Olga Zavgorodnia | | 872.00 | |
| 7/7 | | Check Crd Purchase 07/02 Tashkent Inc North Hollywo CA 425907xxxxxx2454 004184071049735 ?McC=5411 | | 85.66 | |
| 7/7 | | POS Purchase - 07/05 Mach ID 000000 Fry S Electronics Woodland Hls CA 2454 00304186814575765 ?McC=5732 | | 30.16 | |
| 7/8 | | Paypal Inst Xfer 140708 Somerlonjew Olga Zavgorodnia | | 1,447.21 | |
| 7/10 | | Paypal Inst Xfer 140710 Vnnal Olga Zavgorodnia | | 46.63 | |
| 7/11 | | Withdrawal Made In A Branch/Store | | 146.00 | |
| 7/11 | | Paypal Inst Xfer 140711 Tammatt26 Olga Zavgorodnia | | 125.80 | |
| 7/11 | | Paypal Inst Xfer 140711 Yoqiniforev Olga Zavgorodnia | | 74.85 | |
| 7/11 | | Paypal Inst Xfer 140711 Jsegeda Olga Zavgorodnia | | 31.00 | |
| 7/14 | | Check Crd Purchase 07/11 Cosmoprof #9001 Encino CA 425907xxxxxx2454 004192780878944 ?McC=5977 | | 16.63 | |
| 7/14 | | Paypal Inst Xfer 140714 Davismemori Olga Zavgorodnia | | 10.68 | |
| 7/14 | | Paypal Inst Xfer 140712 Netflix Inc Olga Zavgorodnia | | 7.99 | |
| 7/14 | | Paypal Inst Xfer 140713 Suntek Olga Zavgorodnia | | 3.48 | |
| 7/21 | | Paypal Inst Xfer 140721 Sflmaven Olga Zavgorodnia | | 78.61 | |
| 7/22 | | American Express ACH Pmt 140721 W8854 Alia Shirzad | | 2,663.32 | |
| 7/22 | | Paypal Inst Xfer 140722 Google Play Olga Zavgorodnia | | 4.99 | |
| 7/28 | | American Express ACH Pmt 140727 W0408 Alia Shirzad | | 446.22 | |
| 7/29 | | American Express ACH Pmt 140721 W8854 Alia Shirzad | | 2,663.32 | |
| 7/31 | | Monthly Service Fee | | 12.00 | |
| **Totals** | | | | | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

Account number: ⬛⬛⬛6992  ▪ July 1, 2014 - July 31, 2014  ▪ Page 2 of 4



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------|-------------------|---------------------|----------------------|
| 7/1 | | WT Fed#02433 Avant-Bank Pjsc /Org=1/Dneprovsky Eduard Srf#. F1S1407017310000 Trn#140701039756 Rfb# | 12,600.00 | | |
| 7/1 | | WT Fed#02450 Avant-Bank Pjsc /Org=1/Dneprovska Nelli Srf# F1S1407017323500 Trn#140701040437 Rfb# | 12,600.00 | | |
| 7/1 | | Wire Trans Svc Charge - Sequence: 140701039756 Srf# F1S1407017310000 Trn#140701039756 Rfb# | | ▮▮▮▮ | |
| 7/1 | | Wire Trans Svc Charge - Sequence: 140701040437 Srf# F1S1407017323500 Trn#140701040437 Rfb# | | | |
| 7/2 | | Online Transfer to Alia Shirzad Crna Business Checking xxxxxx5028 Ref #Ibe5Jz5Pvd on 07/01/14 | | 35,000.00 | |
| ▮▮▮ | | United Amsllt AS Wir 6/22 Shirzad ▮▮▮▮ | | ▮▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮ | | | | ▮▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮ | | | | ▮▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮ | | | | ▮▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮ | | ▮▮▮▮ Amsllt AS Wir ▮▮▮▮ | | ▮▮▮▮▮ | ▮▮▮▮ |
| 7/24 | | Online Transfer to Alia Shirzad Crna Rel #Ibe2N59N22 Business Checking Credit Card Payment | | 5,000.00 | |
| | | ▮▮▮▮ Amsllt AS Wir ▮▮▮▮ | | ▮▮▮▮▮ | ▮▮▮▮ |
| Ending balance on 7/31 | | | | | ▮▮▮▮ |
| Totals | | | ▮▮▮▮▮ | ▮▮▮▮▮ | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 07/01/2014 - 07/31/2014 | Standard monthly service fee ▮▮▮ | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Minimum daily balance | ▮▮▮▮ | ▮▮▮▮ ☑ |
| · Average ledger balance | ▮▮▮▮ | ▮▮▮▮ ☑ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 ☐ |
| wawa | | |

## Account transaction fees summary

| Service charge description | Units used | Units Included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Transactions | ▮▮▮ | ▮▮▮ | 0 | ▮▮▮ | 0.00 |
| Total service charges | | | | | $0.00 |



Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX0902

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as ~~of~~ | |
| Current Posted Balance | |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | |

### Transactions

Show:  for  Date Range  08/13/14 to 08/13/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions   Note: Debit card transaction amounts may change | | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 08/13/14 | ONLINE TRANSFER TO ALIA SHIRZAD ORNA REF #IBE5KCZTBX BUSINESS CHECKING CREDIT CARD PAYMENT | | $3,428.00 |
| Totals | | $0.00 | $3,428.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

https://online.wellsfargo.com/das/cgi-bin/session.cgi?sessargs=SkpoEV4Orev6rfbA-Nd4JIT6ZYhg4S7x

 Wells Fargo Business Online®

## Account Activity

**Business and Personal Accounts**

**BUSINESS CHECKING XXXXXX6992**

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as ~~████████~~ | ~~████████~~ |
| Current Posted Balance | ~~████████~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~████████~~ |

### Transactions

Find Transactions
Description or Keyword
Dates10      Date    08/18/14
Amounts or Check Numbers
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| **Pending Transactions** | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| **Posted Transactions** | | | |
| 08/18/14 | TRANSFER TO ALIA SHIRZAD CRNA REF #OPEG8KYNX9 BUSINESS CHECKING FURNITURE PURCHASE   *Furniture for condo* | | $2,000.00 |
| Totals | | $0.00 | $2,000.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.



Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX0002

### Activity Summary

| | |
|---|---|
| Ending Collected Balance ~~redacted~~ | ~~redacted~~ |
| Current Posted Balance | ~~redacted~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~redacted~~ |

### Transactions

Show:  for  Date Range  08/22/14  to  08/22/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 08/22/14 | TRANSFER TO ALIA SHIRZAD CRNA REF #OPEK8NKP4B BUSINESS CHECKING BALANCE MAINTENANCE | | $3,000.00 |
| Totals | | $0.00 | $3,000.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

☖ Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

https://online.wellsfargo.com/das/cgi-bin/session.cgi?sessargs=SkpoEV4Orov5rfbA-Nd4JIT6ZYhg4S7x



Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX6992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance as ~~████~~ | ~~████~~ |
| Current Posted Balance | ~~████~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~████~~ |

### Transactions

Find Transactions
Description or Keyword
Dates10                     Date   08/29/14
Amounts or Check Numbers
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 08/29/14 | HSA Contribution ACH 000000020012874 ALIA SHIRZAD | | $6,550.00 |
| Totals | *← Family health insurance* | $0.00 | $6,550.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

☎ Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.



Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX6992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | ~~redacted~~ |
| Current Posted Balance | ~~redacted~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~redacted~~ |

### Transactions

Show:   for  Date Range  00/22/14  to  00/22/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 00/22/14 | ☰ONLINE TRANSFER TO ALIA SHIRZAD CRNA REF #IBEXR5LK2X BUSINESS CHECKING CREDIT CARD PAYMENT | | -$4,500.00 |
| Totals | | $0.00 | -$4,500.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

⌂ Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

https://online.wellsfargo.com/das/cgi-bin/session.cgi?sessargs=SkpoEV4Orev6rfbA-Nd4JlT6ZYhg4S7x

 Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX0992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | ~~[redacted]~~ |
| Current Posted Balance | ~~[redacted]~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~[redacted]~~ |

### Transactions

Show: for Date Range 10/03/14 to 10/03/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 10/03/14 | ⊠ ONLINE TRANSFER TO ALIA SHIRZAD CRNA REF #IBE2NSFYQN BUSINESS CHECKING CREDIT CARD PAYMENT | | $3,000.00 |
| Totals | | $0.00 | $3,000.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

☎ Equal Housing Lender

© 1995 – 2016 Wells Fargo. All rights reserved.

Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX6992

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | |
| Current Posted Balance | |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | |

## Transactions

Find Transactions
Description or Keyword
Dates10          Date  10/14/14
Amounts or Check Numbers
Type

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions | Note: Debit card transaction amounts may change | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 10/14/14 | ONLINE TRANSFER TO ALIA SHIRZAD ORNA REF #IBEXRC6Q9N BUSINESS CHECKING FURNITURE CREDIT CARD PA VIA MOBILE — *Furniture for Condo* | | $5,000.00 |
| Totals | | $0.00 | $5,000.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

🏠 Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

 Wells Fargo Business Online®

## Account Activity

Business and Personal Accounts

BUSINESS CHECKING XXXXXX0002

### Activity Summary

| | |
|---|---|
| Ending Collected Balance | ~~redacted~~ |
| Current Posted Balance | ~~redacted~~ |
| Pending Withdrawals/ Debits | $0.00 |
| Pending Deposits/ Credits | $0.00 |
| Available Balance | ~~redacted~~ |

### Transactions

Show:  for  Date Range: 11/05/14 to 11/05/14

| Date ↓ | Description | Deposits / Credits | Withdrawals / Debits |
|---|---|---|---|
| Pending Transactions   Note: Debit card transaction amounts may change. | | | |
| No pending transactions meet your criteria above. | | | |
| Posted Transactions | | | |
| 11/05/14 | ⊡ONLINE TRANSFER TO ALIA SHIRZAD CRNA REF #IBE8H0Q0RJ BUSINESS CHECKING CREDIT CARD PAYMENT | | $3,500.00 |
| Totals | | $0.00 | $3,500.00 |

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC. Wells Fargo Bank, N.A. is a banking affiliate of Wells Fargo & Company.

☖ Equal Housing Lender
© 1995 – 2016 Wells Fargo. All rights reserved.

## Ross Gonzalez

| | |
|---|---|
| **From:** | Ross Gonzalez [rossgonzalez@gonzalezplc.com] |
| **Sent:** | Tuesday, March 01, 2016 1:24 PM |
| **To:** | 'David Seror' |
| **Cc:** | docman148@gonzalezplc.com |
| **Subject:** | FW: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569 |
| **Attachments:** | Payments from 5029 (use of 75K)_redacted.pdf; Transfers and Payments from 6692 (use of 75K) _ redacted.pdf |
| | |
| **Categories:** | Successfully sent to TCMS |

**From:** Leslie Cohen [mailto:leslie@lesliecohenlaw.com]
**Sent:** Tuesday, March 01, 2016 1:19 PM
**To:** Ross Gonzalez (rossgonzalez@gonzalezplc.com)
**Cc:** J'aime Williams; Brian Link
**Subject:** FW: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569


Leslie A. Cohen



Leslie Cohen Law PC
506 Santa Monica Bl., Suite 200
Santa Monica, CA 90402
310-394-5900
fax 310-394-9280
cell 310-922-8104
www.lesliecohenlaw.com


**From:** J'aime Williams
**Sent:** Tuesday, March 1, 2016 1:16 PM
**To:** Leslie Cohen <leslie@lesliecohenlaw.com>
**Subject:** FW: Correspondence re Pedram Shirzad Case No. 1:15-bk-11350-VK - file no. 77-03569


*J'aime Williams*
*Associate Bankruptcy Attorney*